# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JEFFREY SCOTT,

                Plaintiff,

        v.                                Case No. 14-CV-908

LT. SCHNIEDER,
SGT. UMENTUM,
C.O. II BEAHM,
C.O. II GILL,
DR. MCLAREN,
DR. ENDRES,
DR. JOHNSTON, AND
DR. BAIRD,

                Defendants.

---

## ORDER

---

Jeffrey Scott, a *pro se* plaintiff, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated while he was an inmate at Waupun Correctional Institution ("Waupun"). The court allowed Scott to proceed on Eighth Amendment excessive force claims against defendants Schnieder, Umentum, Beahm, and Gill, as well as Eighth Amendment claims regarding the mental health care he

received from defendants McLaren, Endres, Johnston, and Baird. The case is now before the court on the defendants' motion for partial summary judgment.

## I. FACTS

Scott is proceeding on claims that he received inadequate mental health care at Waupun for psychological problems he suffered as a result of a November 2013 cell extraction and strip search. (ECF No. 27, ¶ 2). The facts are primarily taken from "Defendants' Proposed Findings of Fact" (ECF No. 27) and Chapter 310 of the Wisconsin Administrative Code. In his unsworn "Plaintiff's Answers to Proposed Findings of Fact," Scott either admits the defendants' proposed findings of fact or objects to them with legal arguments or in a way that is not supported by admissible evidence. (ECF No. 31). To the extent that Scott has presented admissible evidence, it will be noted.

The Inmate Complaint Review System ("ICRS") is the administrative remedy available to inmates within the Wisconsin prison system for complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code provides that, before an inmate may commence a civil action, he shall exhaust all administrative remedies that the Wisconsin Department of Corrections ("DOC") has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1). Complaints filed under the ICRS must "[c]ontain

only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code § DOC 310.09(1)(e).

An inmate begins the ICRS process by filing a complaint with the Inmate Complaint Examiner ("ICE") at his institution. A complaint must be filed within fourteen calendar days of an alleged incident, though the deadline can be waived or extended for good cause. Wis. Admin. Code § DOC 310.09(6). After receiving a complaint, the ICE either returns the complaint to the inmate or enters and processes the complaint.

The procedures for returning a complaint are set forth in Wis. Admin. Code § DOC 310.09(1) and (3). An ICE "shall return, and not process as complaints, submissions that do not meet the requirements under sub. (1)," which include being typed or legibly written on the proper forms and signed by the inmate with the name under which the inmate was committed or his legal name, if he has had a name change. Wis. Admin. Code §§ DOC 310.09(1) and (3). Complaints also must be returned if they "contain language that is obscene, profane, abusive, or threatens others, unless such language is necessary to describe the factual basis of the substance of the complaint" or if they contain more than one issue per complaint or do not clearly identify the issue. Wis. Admin. Code §§ DOC 310.09(1)(c) and (e).

If an inmate complaint is not returned, the ICE must review and acknowledge receipt of the complaint in writing within five working days of the date of receipt. Wis.

Admin. Code § DOC 310.11(2). Within twenty days from the date of acknowledgement the ICE must either reject the complaint or send to the reviewing authority a recommendation to dismiss or affirm the complaint. Wis. Admin. Code § DOC 310.11(4) and (11). The "reviewing authority" means the warden, bureau director, administrator, or designee who is authorized to review and decide an inmate complaint at the institution level. Wis. Admin. Code § DOC 310.11(2). The reviewing authority must do one of the following: (1) dismiss the complaint, (2) dismiss the complaint with modifications, (3) affirm the complaint, (4) affirm the complaint with modifications, or (5) return the complaint to the ICE for further investigation. Wis. Admin. Code § 310.12(2). If the complaint is affirmed, "[t]he department shall implement an affirmed decision without 30 working days from the date of the decision." Wis. Admin. Code § 310.15(1). "If an affirmed complaint has not been implemented within 30 working days, the complainant may directly inform the decision-maker in writing of the failure to implement the decision." Wis. Admin. Code § 310.15(2).

The ICE may reject a complaint for a number of reasons set forth in Wis. Admin. Code § DOC 310.11(5). One of the reasons an ICE may reject a complaint is if "[t]he inmate does not allege sufficient facts upon which redress may be made." Wis. Admin. Code § DOC 310.11(5)(d). "An inmate may appeal a rejected complaint within 10 calendar days only to the appropriate reviewing authority who shall only review the

4

basis for the rejection of the complaint. The reviewing authority's decision is final."

Wis. Admin. Code § DOC 310.11(6).

Defendant James Muenchow is currently employed by the DOC as the ICE at Waupun, a position he has held since August 16, 1998. (*Id.* at ¶ 1). In his capacity as ICE, Muenchow has duties and responsibilities as generally defined by Wis. Admin. Code chapter DOC 310 and has access to complaints filed by inmates while incarcerated at Waupun. (*Id.* at ¶ 2). Muenchow searched the business records of his office for inmate complaints filed by Scott. (*Id.* at ¶ 13). Scott filed one inmate complaint alleging that he received inadequate mental health care at Waupun after November 2013, the date of the cell extraction and strip search. (*Id.* at ¶ 14). Muenchow found no record of any return letters being sent to Scott regarding complaints about inadequate mental health care at Waupun after November 2013. (Id. at ¶ 19).

On April 9, 2014, Scott was transferred from Waupun to Green Bay Correctional Institution ("GBCI"). Wisconsin Department of Corrections Offender Locator, http://offender.doc.wi.us/lop (last visited Jan. 7, 2016). That same day, Scott prepared offender complaint number GBCI-2014-7785, listing the date of incident or denial of request as April 6, 2014. The ICE office received the complaint on April 11, 2014, and issued a receipt for it on April 18, 2014. (*Id.* at ¶ 15). The complaint read:

> On the above date while housed at W.C.I. I wrote to Dr. Baird the head of Psych Services in regards to the fact that when I was sexually assaulted on 11-11-13 by a C.O. Dr. McLaren pulled me out and told me that Dr. Endres was my

clinician and would be seeing me. Dr. Endres came and told me that she was going to pull me out but she never did. 2 wks later Dr. Endres came and told me that she was no longer my clinician, Dr. Johnston was. Dr. Johnston pulled me out once. She told me she was going to pull me out again but she didn't. Drs. McLaren, Endres, and Johnston all failed to provide me appropriate psychological care while I was going through this crises. [sic]

(ECF No. 28-2, p 6).

Muenchow rejected Scott's complaint on June 4, 2014, stating:

Inmate Scott submits a broad complaint alleging lack of appropriate M/H care after an 11/11/13 incident while he was at WCI. He names several clinicians and references varied dates of contact with each clinician. He also alleges statements made by some clinicians that at this point, whether or not verifiable, only serve to clarify the distinction between each clinical contact, the date of that clinical contact and what possible inadequacy allegedly existed in the treatment from each clinician named in the complaint. What is left is a complaint that is so overly broad that it constitutes more than one alleged serious or important defect or omission on the part of more than one clinician on more than one date, occurring over 4 months prior to the submission date. Coupling that determination with the fact inmate Scott does not state what about any element of treatment provided, or not, by any clinician was inadequate constitutes insufficient information what with also considering inmate Scott himself indicates PSU staff did make contact with him subsequent to the incident.

In short, the submission does not allege one serious or important defect or omission and a date of occurrence whereas a singular response can be provided. Rejected pursuant to DOC 310.11(5)(c), Wis. Adm. Code, because the "inmate does not allege sufficient facts upon which redress may be made."

(ECF No. 27, ¶ 16).

With the rejection, Scott received a document instructing him how to appeal the rejection if he chose to do so:

> Per DOC 310.11(6), you may appeal the rejection of this complaint within 10 calendar days to the appropriate reviewing authority. The reviewing authority will only review the basis for the rejection of this complaint, not the merits of the complaint.
>
> If you wish to appeal, complete form DOC 2182 Request for Review of Rejected Complaint and send to:
>
> > INSTITUTION COMPLAINT EXAMINER
> > WAUPUN CORRECTIONAL INSTITUTION
> > 200 S. MADISON STREET
> > P.O. BOX 351
> > WAUPUN, WI 53963-0351

(*Id.* at ¶ 17). Muenchow found no record that Scott filed a Request for Review of Rejected Complaint. (*Id.* at ¶ 18).

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II.    ANALYSIS

The defendants argue that Scott failed to exhaust his administrative remedies with regard to his mental health care claims. As a result, they claim that the defendants named in Scott's mental health claims—McLaren, Endres, Johnston, and Baird—are entitled to summary judgment.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

Case 2:14-cv-00908-WED   Filed 01/08/16   Page 8 of 13   Document 45

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 87, 92 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). It is the defendants' burden to establish that the plaintiff has failed to exhaust administrative remedies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

"Unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Pozo*, 286 F.3d at 1023. "Any other approach would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem – or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner." *Id.* at 1023-24 (citations omitted). "To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim." *Id.* at 1025.

In *Pozo*, the court concluded that to allow a prisoner to appeal almost a year late "would leave § 1997e(a) without any oomph." *Id.* at 1025. Although *Pozo* involved the timeliness of an appeal, the reasoning applies to all of the administrative rules regarding exhaustion. The Supreme Court stated in *Woodford*:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Woodford*, 548 U.S. at 95.

The defendants submit that the only complaint which Scott filed relating to his claims in this lawsuit was rejected because it "did not allege sufficient facts upon which redress may be made." They argue that they are entitled to summary judgment because a complaint rejected for a procedural error does not constitute proper exhaustion of administrative remedies. *See Woodford*, 548 U.S. at 90-91; *Pozo*, 286 F.3d at 1023. They also point out that Scott failed to timely file an appeal from the rejection of his complaint, a further failure to exhaust his administrative remedies.

Scott makes a number of arguments regarding why he believes he exhausted his administrative remedies. Some of his arguments are set forth in his brief in opposition to defendants' motion for partial summary judgment (ECF No. 29), and he includes others in his answers to the defendants' proposed findings of fact (ECF No. 31). In his brief, Scott primarily argues that a late complaint can constitute proper exhaustion, even if it not accepted by the prison. He also contends that federal courts should find proper exhaustion even if administrative remedies are only exhausted *after* a plaintiff files his complaint in federal court. Scott asserts that he would have properly exhausted his administrative remedies if he had filed an appeal of the rejection of his complaint and that his attempts to file such an appeal, possibly with the warden at Green Bay Correctional Institution or the CCE, should count even though that was not the process described in the paperwork he received with the rejection of his complaint.

Many of Scott's arguments relate to timeliness, both the timeliness of his April 2014 complaint (which was not the grounds for which it was rejected) and the timeliness of his appeal from the rejection of the complaint. The facts regarding whether or when Scott appealed the rejection of his complaint are unclear. The defendants have no record of an appeal. However, on July 14, 2015, Scott filed a declaration stating that he "has since exhausted his administrative remedy by filing the appeal of the reject Inmate Complaint to the Warden by completing a DOC 2182 form." (ECF No. 30, ¶ 5). In his unsworn answer to the defendants' proposed findings of fact, Scott suggests that he

submitted a DOC 2182 form to either the Corrections Complaint Examiner (CCE) and/or the warden at Green Bay Correctional Institution. (ECF No. 31, ¶¶ 5-7). Scott also references Exhibits A and B in that document, but no exhibits were attached when the document was e-filed. Those exhibits could provide additional information regarding how and when Scott attempted to appeal the rejection of his complaint, but that information is not material to the outcome of the defendants' motion because the motion does not depend on whether or when Scott appealed the rejection of his complaint.

It is undisputed that Scott failed to appeal the rejection of his complaint in the manner he was instructed when he received the rejection. Even if Scott had properly appealed the rejection of his complaint, a rejected complaint does not constitute the proper exhaustion of Scott's administrative remedies. *See Woodford*, 548 U.S. at 95; *Pozo*, 286 F.3d at 1023.

Scott suggests that he was a segregation inmate and that "often times inmates are denied ancillary materials such as complaints and other forms while housed in the segregation unit." (ECF No. 31, ¶ 2). However, he does not say that he was denied any materials that prevented him from properly exhausting his administrative remedies against these mental health providers. The court notes that Scott is familiar with the administrative process for filing complaints. Since 2004, Scott has submitted at least 37 complaints at three different DOC institutions. (ECF No. 28-1). In a number of those

instances, he appealed the rejection of complaints to the warden or appealed the dismissal of complaints to the CCE office. (*Id.*)

Scott did not exhaust his administrative remedies with regard to his mental health care claims against defendants McLaren, Endres, Johnston, and Baird. Those defendants are therefore entitled to summary judgment.

**WHEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment (ECF No. 25) is **GRANTED**.

**IT IS FURTHER ORDERED** that the following individuals are **DISMISSED WITHOUT PREJUDICE** as defendants in this action: Dr. McLaren, Dr. Endres, Dr. Johnston and Dr. Baird.

**IT IS FURTHER ORDERED** that the remaining parties shall file any motions for summary judgment that they wish to file within 30 days of the date of entry of this order.

Dated at Milwaukee, Wisconsin this 8th day of January, 2016.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

13